**Autumn DOXSEE, Appellant,**

v.

**Adrian DOXSEE and Progressive Insurance Co., Appellees.**

No. S–10424.

Supreme Court of Alaska.

Nov. 21, 2003.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Michael P. McConahy, McConahy, Zimmerman & Wallace, Fairbanks, for Appellee Progressive Insurance Company.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Autumn Doxsee sued her husband, Adrian,[1] for injuries she sustained as a passenger in his vehicle. Adrian's insurance company provided him with an independent attorney to represent his interests and retained separate counsel to defend the case. A jury returned an award substantially lower than the defense's offer of judgment, and the trial court awarded attorney's fees to the defense as the prevailing party. Doxsee appeals, claiming that the trial court's jury instructions were insufficient and that the court abused its discretion in denying her motion for a new trial and in awarding attorney's fees for both the attorney who defended the case and her husband's independent attorney. We affirm.

## II. FACTS AND PROCEEDINGS

In July 1996 Autumn Doxsee had cervical fusion surgery to alleviate her chronic neck pain. Thirteen days later, in early August 1996, Doxsee and her husband, Adrian, were traveling to a doctor's appointment in Kenai when Adrian rear-ended the vehicle in front of them. Doxsee was wearing a neck brace to prevent motion.

An ambulance took Doxsee to the emergency room, where Dr. Stephen Hileman examined her. Doxsee complained of generalized pain in her neck, but her examinations were normal considering her recent surgery. Dr. Hileman took an x-ray to look for injury to her neck and did not find any. According

---

1. Although Autumn and Adrian apparently were not formally married, their common-law marriage was treated as a spousal relationship throughout the course of these proceedings.

to Dr. Hileman, Doxsee told him that her pain had not worsened after the accident. Dr. Hileman gave Doxsee some pain medication and sent her home.

Doxsee saw a doctor in Kenai the following day, complaining of leg, arm, neck, and back pain. A week or so later she consulted Dr. David Spindle, who had performed her neck fusion surgery. Dr. Spindle thought that the accident was a minor incident and that she was recovering well from the surgery. He released her from his care in October 1996.

However, Doxsee's physical pain continued, and she began to have weakness in her grip. She returned to Dr. Spindle, who took x-rays and an MRI that revealed that one of the two bone grafts in her neck had not fused. Dr. Spindle performed a second neck fusion surgery in March 1997. Doxsee's total medical costs at the Alaska Native Medical Center after the August 1996 accident were $10,136. She has had difficulty swallowing as a complication of the second surgery.

Meanwhile, Doxsee had sued Adrian's ex-wife, Wanda Delane, for injuries that Doxsee sustained in an auto accident with Delane in 1994. As part of her alleged damages in that suit, Doxsee claimed the expenses of her first neck fusion surgery in July 1996. Doxsee's suit against Delane was tried in December 1997. The jury awarded no damages.

In March 1998 Doxsee sued Adrian for negligently injuring her in the August 1996 accident—the accident that occurred thirteen days after Doxsee's first neck fusion surgery. Doxsee sought past and future medical expenses and past and future non-economic damages.

Adrian's insurer, Progressive Insurance Company, retained an attorney to represent Adrian in this litigation. Adrian and his insurance-appointed attorney, Robert L. Griffin, filed a "Motion ... to Define his Counsel's Status and Role." Griffin asserted that Adrian had an interest in maximizing Doxsee's recovery and that Progressive's interest in defending the claim conflicted with Adrian's instructions to Griffin. Griffin asked the court to decide whether he should take direction from Adrian or from Progressive, arguing that the court should require Progressive to appoint independent counsel to represent Adrian's interests under this court's decision in *Myers v. Robertson.*[2] Doxsee filed a limited opposition to Griffin's motion, correcting some of the asserted facts but agreeing that *Myers* required Adrian to be represented by an independent counsel. The court ruled that Adrian was entitled to independent counsel at Progressive's expense, that the independent counsel was not required to report to Progressive "except to the extent required by AS 21.89.100(e) and (g),"[3] and that Progressive was entitled to retain separate counsel to represent its own interests by presenting a "classic" defense.

Griffin continued as Adrian's independent attorney, and Progressive retained separate counsel to present Adrian's "classic" defense. After being designated Adrian's independent counsel, Griffin played a background role in the litigation, and Progressive's new attorney took charge of the defense.

In January 2000 the defense made an offer of judgment for $12,500 plus prejudgment interest, attorney's fees and costs, and waiver of a lien for medical payments of $1,083.71. Doxsee rejected the offer.

Adrian admitted negligence before trial. The case proceeded to a jury trial on causation and damages in February 2001. Adri-

---

2. 891 P.2d 199 (Alaska 1995).

3. AS 21.89.100(e) and (g) provide:

(e) If the insured selects independent counsel at the insurer's expense, the independent counsel and the insured shall consult with the insurer on all matters relating to the civil action and shall disclose to the insurer in a timely manner all information relevant to the civil action, except information that is privileged and relevant to disputed coverage....

....

(g) If an insured selects independent counsel under this section, both the counsel representing the insurer and independent counsel representing the insured shall be allowed to participate in all aspects of the civil action. Counsel for the insurer and insured shall cooperate fully in exchanging information that is consistent with ethical and legal obligations to the insured. Nothing in this section relieves the insured of the duty to cooperate fully with the insurer as required by the terms of the insurance policy.

an's independent attorney, Griffin, participated minimally in the trial.

Doxsee called Dr. Spindle to testify at trial. He testified that he believed the August 1996 accident had caused Doxsee's first neck fusion to fail, creating a need for the second surgery. The defense introduced expert testimony by Dr. John Ballard, who had performed an independent medical evaluation based on Doxsee's medical records and concluded that the accident did not cause the first surgery to fail.

At the end of the trial, the jury returned a verdict finding Adrian liable for Doxsee's injury but awarding damages totaling only $9,358. After the superior court denied Doxsee's motions for additur or a new trial, Progressive moved for an award of attorney's fees and costs under Alaska Civil Rule 68, alleging that its pretrial offer of judgment exceeded the jury's verdict. In advancing this motion, Progressive sought reimbursement for fees it had paid to its own counsel, Michael P. McConahy, and to Adrian's independent counsel, Griffin. The superior court granted Progressive's motion and entered judgment for the defense in the amount of $24,763.53 after subtracting Doxsee's jury award.

Doxsee appeals.

## III. DISCUSSION

### A. Jury Instruction

Doxsee first argues that the trial court erroneously failed to instruct the jury on the standard of proof that applies when the plaintiff claims aggravation of a pre-existing injury.[4]

The trial court instructed the jury according to Alaska Pattern Civil Jury Instruction 20.11, which addresses aggravation of a pre-existing injury.[5] We approved a substantially identical instruction in *LaMoureaux v. Totem Ocean Trailer Express, Inc.*[6]

Doxsee proposed an additional jury instruction that would have addressed her burden of proof more specifically. Our case law establishes that when it is "difficult to determine how much of a plaintiff's injury is due to the preexisting condition and how much to the aggravation caused by the defendant," a plaintiff seeking to establish causation need not "prov[e] with great exactitude the amount of aggravation."[7]

Focusing on this case law, Doxsee proposed the following jury instruction:

In calculating the amount of damages to be awarded for the aggravation of a pre-existing injury or condition, you should attempt to reasonably estimate the amount of damages that reflects the additional damages plaintiff suffers beyond her pre-existing injury or condition, based on the evidence presented to you even if such an amount cannot be fixed with mathematical precision. Due to the difficulty in determining the amount of damages to be awarded in aggravation type cases, the Plaintiff is not required to prove a specific amount of damages in order to recover an award in such a case.

Doxsee argues that the trial court erred in rejecting this proposed instruction. She contends that the proposed instruction was required under our decision in *Tolan v. ERA*

---

4. We review jury instructions de novo. *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001). "In reviewing jury instructions, the relevant inquiry is whether the instructions inform the jury of the applicable law." *Lynden, Inc. v. Walker*, 30 P.3d 609, 617 (Alaska 2001).

5. Jury Instruction 20 provided:

A person who has a condition or disability at the time of an injury cannot recover damages for that condition or disability. However, she is entitled to recover damages for an aggravation of such pre-existing condition or disability if the aggravation is the legal result of the injury.

This is true even if the person's condition or disability made her more susceptible to the possibility of ill effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury. In other words, the law provides that a defendant takes the plaintiff as he finds her.

Where a pre-existing condition or disability is so aggravated, the damages as to such condition or disability are limited to the additional damages caused by the aggravation.

6. 632 P.2d 539, 543–45 (Alaska 1981).

7. *Id.* at 544.

*Helicopters, Inc.*[8] But Doxsee's reliance on *Tolan* is misplaced. The trial court in *Tolan* inserted additional language into the pattern jury instruction on aggravation—the instruction actually given here—providing that "[i]t is necessary for the plaintiffs to prove ... that it is more likely than not that [plaintiff's] pre-existing condition or disability has been aggravated by the defendant's conduct and the extent to which it has been aggravated."[9] We disapproved of this additional language in *Tolan*, noting that, in context, its emphasis on the plaintiff's general burden of proof by a preponderance of evidence would have been inappropriate "without qualification as to the relaxed requirement of proof on [the issue of aggravation]."[10]

Thus, far from modifying the pattern instruction we approved in *LaMoureaux*, *Tolan* simply pointed out the hazards of adding to the pattern instruction. *Tolan* thus implicitly recognized the pattern instruction to be a sufficient statement of the law relating to aggravation of a pre-existing injury. Since *Tolan*, we have explicitly reiterated our approval of the pattern instruction's language in *Glamann v. Kirk*.[11] Thus, the instruction that was given to the jury correctly stated the applicable law.

Moreover, Doxsee has failed to establish that her proposed instruction would have had any appreciable effect on the jury's verdict. By its own language, the proposed instruction described how the jury should "estimate the amount of damages" Doxsee suffered, not how it should determine whether Adrian's negligence *caused* a particular item of damages. Yet as Doxsee acknowledges on appeal, the jury's minimal verdict evidently reflects its belief that the accident did not

cause the need for the second surgery. Hence, the jury apparently never reached the issue of estimating the amount of damages attributable to the second surgery—the issue that Doxsee's proposed instruction would have addressed.[12] In summary, the superior court's jury instruction on causation was legally sufficient, and Doxsee's proposed instruction would have had no likely effect on the jury's verdict, even if the instruction had been given.

## B. Additur or New Trial

■■■ Doxsee next argues that the trial court erred in rejecting her alternative post-trial motions for additur or a new trial. In these motions, Doxsee argued that, under the factors set out in the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[13] and adopted by this court in *State v. Coon*,[14] the superior court erred in admitting the testimony of Progressive's expert, Dr. Ballard. Doxsee additionally pointed to three occasions when, according to Doxsee, the court admitted evidence that was more prejudicial than probative, in violation of Alaska Evidence Rule 403. Doxsee contended that the combined effect of these errors and the jury's allegedly unreasonable verdict entitled her to additional damages of $21,766 ($10,136 for the cost of her second surgery and $11,630 for pain and suffering) or, in the alternative, to a new trial. The superior court denied Doxsee's motions. On appeal, Doxsee argues that in light of all the errors she has claimed, the evidence was "so slight and unconvincing as to make the verdict unreasonable and unjust."[15]

---

**8.** 699 P.2d 1265 (Alaska 1985).

**9.** *Id.* at 1271.

**10.** *Id.* at 1272.

**11.** 29 P.3d 255, 261 (Alaska 2001).

**12.** Notably, our case law distinguishes between the burdens of proof that govern causation of aggravated injury and estimation of the amount of damages. In *Pluid v. B.K.*, 948 P.2d 981 (Alaska 1997), on which Doxsee based her proposed instruction, we described the burden that attaches with respect to the value of damages

once causation of damages is proved. *Id.* at 984. In contrast, the *LaMoureaux, Tolan,* and *Glamann* line of cases addresses the relaxed standard of proof that governs on proving causation of aggravated injury.

**13.** 509 U.S. 579, 592–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**14.** 974 P.2d 386, 395 (Alaska 1999).

**15.** *Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986). "In reviewing a ruling on a motion for new trial, this court will not interfere with the trial court's decision except in the most

■ Doxsee's argument is premised on her claims of evidentiary error. But Doxsee waived her claim as to Dr. Ballard's expert testimony by agreeing not to object to its admission if Dr. Ballard would "restrain his testimony to review of the medical evidence without relying on any opinions as to the 'force of the collision.'" When Dr. Ballard testified at trial, Doxsee's counsel stated that he had "no objection." Having agreed to Dr. Ballard's testimony, Doxsee cannot now assert that its admission was error justifying additur or a new trial.[16]

■ Doxsee's remaining claims are based on three instances when the superior court admitted evidence that Doxsee claims was "highly prejudicial."[17] First, the trial court allowed the defense to question Doxsee about cursing at the driver who collided with Adrian in the accident. Second, the court allowed the defense to question Doxsee about her earlier lawsuit against Adrian's ex-wife, Wanda Delane. And finally, the court allowed the defense to question Dr. Spindle about his use of a surgical tool in the course of Doxsee's second surgery that he had constructed from the camshaft of a Chevrolet.

But Doxsee's argument improperly assumes its own premise—that the trial court erred in admitting this evidence. Doxsee has not challenged the court's evidentiary rulings in independent points on appeal. In connection with her additur/new-trial claim, she advances conclusory assertions concerning the prejudicial impact of the disputed evidence but offers no discussion of its potential probative value and sets forth no meaningful legal analysis to establish that the court erred in its evidentiary rulings. Our own review of the record reveals no abuse of discretion. Accordingly, we find no merit in Doxsee's allegations that evidentiary error required the trial court to grant her motion for additur or a new trial.

## C. Attorney's Fees

■ The superior court found that Progressive was the prevailing party under Civil Rule 68 because its offer of judgment, which Doxsee rejected, exceeded the jury's award by more than five percent.[18] The court therefore awarded attorney's fees to Progressive for fees that it paid to both its own counsel, McConahy, and to Adrian's independent

---

exceptional circumstances and to prevent a miscarriage of justice." *Id.* "The trial court has broad discretion in deciding whether to grant or deny a motion for a new trial." *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 49 P.3d 228, 234 n. 23 (Alaska 2002). We will affirm a trial court's decision to deny a new trial unless the evidence is "so slight and unconvincing as to make the verdict unreasonable and unjust." *Hutchins*, 724 P.2d at 1199.

**16.** *See Walden v. Dep't of Transp.*, 27 P.3d 297, 304 (Alaska 2001) ("It is well-settled that a party must object to evidence at the time it is offered in order to preserve the issue on appeal.").

Doxsee additionally argues that because she did not know about Dr. Ballard's alleged lack of qualifications until trial, her failure to bring a pre-trial *Daubert* challenge does not amount to a waiver of her objection to his testimony. She attempts to support this argument by citing *Licciardi v. TIG Insurance Group*, 140 F.3d 357 (1st Cir.1998). But *Licciardi* vacated a defense verdict where the defense expert's trial testimony contradicted and went beyond the scope of the report the plaintiff had received before the trial. *Id.* at 359. Here, Doxsee has admitted that "Dr. Ballard's opinion at trial was essentially a verbatim restatement" of his expert report. And unlike the plaintiff in *Licciardi*, Doxsee did not

object to Dr. Ballard's expert testimony at any point during the trial. *See id.* at 359.

**17.** Alaska Evidence Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**18.** Alaska Civil Rule 68 provides, in relevant part:

(a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued....

(b) If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, or, if there are multiple defendants, at least 10 percent less favorable to the offeree than the offer, the offeree, whether the party making the claim or defending against the claim, shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney fees incurred by the offeror from the date the offer was made....

counsel, Griffin. Doxsee argues that the award of fees for work performed by Progressive's counsel following Griffin's appointment as Adrian's independent attorney amounted to error.[19]

But under the specific facts presented here, we find Doxsee's argument unpersuasive. In response to Adrian's pre-trial motion to define his counsel's role, Doxsee expressly indicated that she did not oppose an order requiring Progressive to retain an independent attorney to represent Adrian's interests. In fact, she actively advocated the appointment, relying on *Myers* and *CHI of Alaska v. Employers Reinsurance Corp.*,[20] by arguing that

> Plaintiffs believe this [is] a *Myers* [ ] case and that independent *CHI* counsel is appropriate. . . . [I]t is respectfully requested that this honorable court enter an order holding that this is a *Myers* type case and that Mr. Griffin is independent *CHI* counsel with no duty to report to the insurance company, nor any duty to present a classic defense.

After Griffin undertook the role of Adrian's independent attorney, Progressive's new attorney took control of the case and tried it to completion, with Griffin playing only a minor role.

On appeal, Doxsee does not challenge the reasonableness of any of the legal billings paid by Progressive. Nor does she contend that there was double billing or unnecessary work in the course of the dual representation.[21] Without citation to any persuasive authority, Doxsee simply reasons that, because she sued Adrian rather than Progressive, she should only be held accountable for fees incurred by Adrian's independent attorney. Because Doxsee's argument is fundamentally inconsistent with her position below that dual representation was warranted in

defense of her claim, we reject the argument as unpersuasive.

## IV. CONCLUSION

We AFFIRM the superior court's jury instructions, its denial of Doxsee's motion for additur or a new trial, and its attorney's fees award.

---

**19.** We review a trial court's award of attorney's fees for abuse of discretion. *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt,* 38 P.3d 528, 531 (Alaska 2001). We will not overturn a trial court's determination of attorney's fees unless it is "manifestly unreasonable." *D.H. Blattner & Sons, Inc. v. N.M. Rothschild & Sons, Ltd.,* 55 P.3d 37, 56 (Alaska 2002).

**20.** 844 P.2d 1113 (Alaska 1993) (holding insured has unilateral right to select independent counsel, subject to implied covenant of good faith and fair dealing).

**21.** Had Doxsee believed there was duplication of effort in the roles of the two defense counsel, she could have been entitled to a reduction in fees under Alaska Civil Rule 82(b)(3)(C), (D), and (E).